1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SANTIAGO MARTINEZ, | Case No.: C 11-5006 PSG |
| Plaintiff, | **ORDER DENYING PLAINTIFF SANTIAGO MARTINEZ'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT MICHAEL J. ASTRUE'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security | |
| Defendant. | |
| | **(Re: Docket Nos. 17, 19, 20)** |

Plaintiff Santiago Martinez ("Martinez") filed this action on March 2, 2012 pursuant to

42 U.S.C § 405(g), appealing the decision by the Commissioner of Social Security

("Commissioner") denying him Social Security insurance benefits. Martinez now moves for

summary judgment.  The Commissioner opposes the motion and cross-moves for summary

judgment.  The matter was submitted without oral argument pursuant to Civ. L.R. 16-5.  Having

reviewed the papers and considered the arguments presented therein, the court DENIES Martinez's

1

Case No.: 11-5006 PSG
ORDER

United States District Court
For the Northern District of California

1  motion for summary judgment and GRANTS the Commissioner's cross-motion for summary

2  judgment.

3  I.   BACKGROUND

4       The following facts are taken from the February 10, 2010 decision by the Administrative

5  Law Judge ("ALJ") and the accompanying administrative record ("AR").  Martinez was born June

6  7, 1951,[1] and has a high school education.[2]  He worked for a construction remodeling company

7  from September 2005 until August 2006.[3]

8       In 2004, Martinez filed an application for Supplemental Security Income ("SSI") benefits[4]

9  alleging disability since February 2001, which ultimately was denied.[5]  On September 8, 2006,

10 Martinez filed a new application for SSI benefits, again alleging disability since February 2001.[6]

11 The agency denied Martinez's September 2006 application initially and on reconsideration.[7]

12 Martinez requested a hearing which an ALJ convened on October 3, 2008.[8]  In a decision dated

13 February 24, 2009, the ALJ determined that Martinez was not disabled.[9]

14      Martinez appealed the ALJ's decision and the Appeals Council ("AC") remanded the case

15 with four instructions: (1) to evaluate Martinez's subjective complaints pursuant to

16 _____

17 [1] *See* AR at 25.

18 [2] *See id.*

19 [3] *See id.* at 183, 315.

20 [4] Title XVI of the Social Security Act provides for payment of SSI benefits to qualifying
individuals.  Unlike Title II Social Security Disability Insurance, in determining SSI benefits, there
is no need to determine a claimant's last insured date.

21 [5] *See id.* at 17.

22 [6] *See id.* at 168-74.

23 [7] *See id* at 99-103, 107-11.

24 [8] *See id.* at 33.

25 [9] *See id.* at 94.

2

Case No.: 11-5006 PSG
ORDER

20 C.F.R. § 416.929; (2) to evaluate the other opinions on the record in accordance with

20 C.F.R. § 416.913(d); (3) to give further consideration to Martinez's maximum residual

functional capacity ("RFC");[10] and (4) to obtain vocational expert ("VE") testimony to clarify the

effect of Martinez's assessed limitations on the availability of a job.[11]  The ALJ convened a second

hearing on November 12, 2009, at which Martinez and a VE testified.[12]  On February 10, 2010, the

ALJ issued his second decision, finding Martinez not disabled since September 8, 2006, which is

the date he applied for SSI benefits.[13] On August 12, 2011, the AC denied further review, making

the ALJ's decision the final determination.[14]

**A.      Medical Evidence**

The AR contains medical records dating back to 2005,[15] but records supporting Martinez's

claims originate in 2006.  In 2006 and 2007, Martinez saw a number of doctors for a host of

complaints, including asthma, chest pain, back pain, foot pain, knee pain, hip pain, groin pain, and

numbness in his feet.[16]

On November 30, 2006, Dr. Clark Gable ("Gable"), an independently retained Social

Security Administration ("SSA") program consultant, examined Martinez.[17]  Based on the physical

examination, Gable concluded that Martinez had low back pain, possibly due to osteoarthritis.

---

[10] A claimant's RFC is what he or she can still do despite existing exertional and nonexertional limitations.  *See Cooper v. Sullivan,* 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[11] *See* AR at 97.

[12] *See id.* at 50-81.

[13] *See id.* at 18-26.

[14] *See id.* at 1.

[15] *See id.* at 272.  The only evidence from 2005 is a blood test showing high cholesterol.  *See id.*

[16] *See id.* at 264-301, 320-44.

[17] *See id.* at 302.

Case No.: 11-5006 PSG
ORDER

Gable acknowledged Martinez's complaints of hip pain but noted that the range of motion in Martinez's hips appeared normal and that he could walk normally.[18]  Gable opined that Martinez could sit for up to 6 hours a day with frequent breaks and could lift 25 pounds frequently and 50 pounds occasionally.[19]

In December 2006, SSA consultant Dr. W.G. Jackson ("Jackson") examined Martinez's records.[20]  Based on the objective medical evidence in Martinez's record, Jackson concluded that Martinez's asthma was under control through the use of inhalers and that his back pain was likely due to arthritis.[21]

On January 11, 2007, x-rays showed calcium in both of Martinez's lower extremities.[22]  On February 21, 2007, an MRI of the right knee showed mild joint effusion and synovitis associated with degeneration of the meniscus.[23]  On March 1, 2007, Dr. Constance Lo ("Lo"), Martinez's treating physician, characterized Martinez's knee condition as chronic right knee pain involving degeneration of the meniscus without a tear.[24]

On December 26, 2007 an MRI of the lumbar ("'07 lumbar MRI") showed multilevel broad-based disc bulge and facet hypertrophy, mild to moderate neural foraminal stenosis, and

---

[18] *See id.*

[19] *See id.*

[20] *See id.* at 315-17.

[21] *See id.* at 317.

[22] *See id.* at 325-26.

[23] *See id.* at 318-19.

[24] *See id.* at 331.

4

some decreased disc height.[25]  Upon physical examination, Lo reported normal appearance and function with the exception of some decreased sensation and vibration in the left leg.[26]

Conservative treatment with exercise, physical therapy, and pain medication appears to have provided relief of Martinez's impairments and pain.[27]  On December 6, 2007, for example, Lo noted that physical therapy seemed to improve Martinez's back pain.[28]  Martinez also showed improved range of motion, decreased pain, and improved balance and walking ability.[29]

In March 2008, Martinez reported no left knee pain,[30] and by April 2008, Martinez reported the ability to sit for 30 minutes, to stand for 20-30 minutes and to walk for 8 blocks.[31]  On August 18, 2008, his physical therapist reported 90% normal left knee flexion.[32]

On October 10, 2008, after continued complaints of left knee pain, Dr. Steven Yoshioka ("Yoshioka") ordered x-rays and an MRI of Martinez's left knee.[33]  Yoshioka's physical evaluation of Martinez did not show any deterioration in his condition.[34]  The x-rays taken that same day showed slight degenerative change, calcification and a large effusion in Martinez's left knee.[35]

---

[25] *See id.* at 356.

[26] *See id.* at 333.

[27] *See id.* at 277, 279, 283, 285, 289, 291, 334, 336, 339-41, and 358.

[28] *See id.* at 358-60.

[29] *See id*. at 360-69.

[30] *See id*. at 363-64.

[31] *See id*. at 361.

[32] *See id*. at 365.

[33] *See id*. at 457-58.

[34] *See id*. at 422.

[35] *See id*. at 421-22.

Case No.: 11-5006 PSG
ORDER

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The MRI of Martinez's left knee, taken on October 16, 2008 ("the '08 MRI"), showed deterioration that the radiologist characterized as a "tear of the meniscus." [36]

In May 2009, Martinez reported worsening of lower extremity pain to his physical therapist,[37] but examination of the left knee showed normal walking ability and no significant abnormalities.[38]

In November 2009, Martinez complained of numbness in his legs and Lo ordered a nerve conduction test comprised of ENG and EMG tests.[39]  The ENG test showed "possible peripheral polyneuropathy in the lower extremities secondary to prior alcohol use" and the EMG test showed "completely normal findings in the left lower extremity which is the more symptomatic side."[40]

On December 8, 2009, Lo filled out a physical RFC questionnaire.[41]  In the questionnaire, Lo noted that the '08 MRI showed a complex tear of the left knee meniscus. Lo did not respond to any questions related to Martinez's functional limitations and instead wrote "unable to assess" next to all of the limitation questions.[42]

**B.     Vocational Expert Testimony**

At the second hearing the VE testified that in light of Martinez's limitations, he could only perform one-third to one-half of the 442,507 nationally available jobs in the medium work

---

[36] *See id*. at 456.

[37] *See, e.g., id.* at 435, 437.

[38] *See id*. at 435, 448.

[39] *See id*. at 483.

[40] *See id.*

[41] *See id.* at 489–93.

[42] *Id.*  Lo submitted a letter explaining that she could not opine on Martinez's physical limitations since such an "evaluation is not done by any of the physicians in our department, as we are not qualified to do this type of extensive and detailed functional evaluation."  *Id.* at 354.

Case No.: 11-5006 PSG
ORDER

category.[43]  As examples of medium category jobs Martinez could perform, the VE testified that Martinez could perform jobs as a driver's helper or a meat clerk and that there were 74,000 and 113,000 nationally available jobs, respectively.  The VE also testified that there were 170 local driver's helper positions and 613 local meat clerk jobs available.[44]

## C.   ALJ's 2010 Findings

At the first step of the traditional five-step disability analysis, the ALJ found Martinez had not engaged in substantial gainful activity since his application date of September 8, 2006.[45]

At step two, the ALJ found that Martinez had severe impairments consisting of degenerative disease of the spine, slight degeneration of the left knee meniscus, and asthma because those impairments "more than minimally affect the claimant's basic work activities."[46] The ALJ concluded that Martinez's allegations of impairments and pain other than that associated with degenerative disease of the spine, slight degeneration of the knee meniscus, and asthma "[we]re not supported by the record."[47]

At step three, the ALJ found Martinez's impairments did not meet or medically equal any of the qualifying impairments.[48]  The ALJ based his opinion on the fact that "the medical evidence does not reflect the severity of condition . . . nor the functional incapacity anticipated under the listings."[49]  Moreover, "the record does not show that [Martinez] cannot ambulate or perform fine

---

[43] *See id.* at 73-81.

[44] *See id.* at 77-8.

[45] *See id.* at 19.

[46] *Id.* at 22.

[47] *Id.* at 20.

[48] *See id.* at 22.

[49] *Id.*

Case No.: 11-5006 PSG
ORDER

or gross movements."[50]   The ALJ noted that "with these conditions involving the claimant's spine and lower extremities . . . the record shows physical examinations which are normal in appearance and function with the exception of some decreased sensation and vibration of the left extremity noted by the treating physician."[51]

At step four, the ALJ determined that Martinez had the RFC to perform medium work "except he is able to occasionally perform stooping and climbing and must avoid moderate exposure to fumes, gases, dust, and poor ventilation."[52]   In arriving at this RFC determination, the ALJ summarized the various opinions regarding Martinez's limitations and explained that he "mainly relied upon the opinions of the program consultants in deciding the RFC because they are consistent with and supported by the record."[53]   The ALJ did not rely upon Lo's opinion as to Martinez's limitations since "[Lo] did not present any such limitations."[54]

The ALJ additionally found Martinez's testimony regarding the "intensity, persistence, and limiting effects of [his] symptoms [] not credible to the extent they [we]re inconsistent with" his RFC determination.[55]   The ALJ noted that the record is "bereft of any reference whatsoever to the claimant not being able walk (sic) with the [alleged] limitations."[56]   "The record reflects a different

---

[50] *Id.*

[51] *Id.* at 20.

[52] *Id.* at 23.

[53] *See id.* at 24

[54] *See id.*

[55] *See id.* at 23.

[56] *Id.* at 24.

8

Case No.: 11-5006 PSG
ORDER

situation than is presented by [Martinez] . . . and raises an issue concerning his reliability in reporting the effects of his condition on his activities."[57]

At step five, the ALJ determined that based on the RFC finding and the testimony of the VE, Martinez was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."[58]  The ALJ thus concluded that Martinez was not disabled "since September 8, 2006, the date the application was filed" and issued his decision.[59]

## II.   LEGAL STANDARDS

### A.   Standard for Reviewing the Commissioner's Decision

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision denying Martinez benefits.  The Commissioner's decision (here the underlying decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.[60]  In this context, the term "substantial evidence" means "more than a scintilla but less than a preponderance – it is such relevant evidence a reasonable mind might accept as adequate to support the conclusion."[61]  When determining whether substantial evidence exists to support the administrative record as a whole, the court must consider adverse as well as supporting evidence.[62]  Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the ALJ.[63]  "If additional proceedings

---

[57] *Id.*

[58] *See id.* at 26.

[59] *See id.* at 14-26.

[60] *See Moncada v. Chater,* 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan,* 966 F.2d 1255, 1257 (9th Cir. 1992).

[61] *See Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1257.

[62] *See Drouin,* 966 F.2d at 1257; *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir. 1989).

[63] *See Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1258.

9

United States District Court
For the Northern District of California

can remedy defects in the original administrative proceedings, a social security case should be remanded."[64]

## B.        Standard for Determining Disability

Disability claims are evaluated using a five-step, sequential evaluation process.  In the first step, the Commissioner must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.[65]  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments that significantly limits the claimant's ability to do basic work activities; if not, a finding of "not disabled" is made and the claim is denied.[66]  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing; if so, disability is presumed and benefits are awarded.[67]  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine claimant's RFC and whether claimant's RFC is sufficient to perform his or her past work; if so, the claimant is not disabled and the claim is denied.[68]  The plaintiff has the burden of proving that he or she is unable to perform past relevant work.[69]  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the

---

[64] *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

[65] *See id.*

[66] *See id.*

[67] *See id.*

[68] *See Drouin,* 966 F.2d at 1257; *Gallant v. Heckler,* 753 F.2d 1450, 1452 (9th Cir. 1984).

[69] *See id.*

10

Case No.: 11-5006 PSG
ORDER

1   burden of establishing that the claimant can perform other substantial gainful work;[70] the

2   determination of this issue comprises the fifth and final step in the sequential analysis.

3                                    **III.    DISCUSSION**

4          Martinez argues that the ALJ erred in finding him not disabled for three reasons: (1) the

5   ALJ failed to properly evaluate the medical evidence in the record; (2) the ALJ failed to include all

6   of Martinez's impairments in the RFC analysis; and (3) the ALJ's vocational findings are not

7   supported by substantial evidence.

8          The Commissioner responds that: (1) substantial evidence supports the ALJ's determination

9   that Martinez was not disabled; (2) the ALJ properly evaluated all of Martinez's medically

10  determinable impairments in his RFC determination; and (3) the ALJ properly relied on VE

11  testimony regarding vocational findings.

12  **A.    Evaluation of the Medical Evidence**

13      **1.    Torn Meniscus**

14         Martinez argues that the ALJ's RFC findings are not supported by substantial evidence

15  because the ALJ's statement that "the record as discussed above does not reflect MRI findings

16  which show a meniscus tear" conflicts with the 2008 MRI showing a "[c]omplex tear of the medial

17  meniscus involving the body and posterior horn."[71]  The Commissioner notes that despite any

18  error, the ALJ's RFC determination is supported by substantial evidence because Martinez was

19  able to work prior to the MRI and his medical records after the MRI show improvement and

20  minimal knee pain.[72]

---

[70] There are two ways for the Commissioner to meet the burden of showing that there is work in significant numbers in the national economy that claimant can perform: (1) by the testimony of a vocational expert; or (2) by reference to the Medical-Vocational Guidelines. *See Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999).

[71] *See* Docket No. 17 at 4.

[72] *See* Docket No. 19 at 5-6.

Case No.: 11-5006 PSG
ORDER

**United States District Court**
For the Northern District of California

1

2

3

In determining a claimant's RFC, the ALJ must consider all symptoms and the extent to which they can reasonably be accepted as consistent with all the evidence.[73]  If the ALJ's RFC determination is supported by substantial evidence, his decision must be upheld.[74]

To the extent that Martinez argues that the ALJ made a mistake, the court agrees.  The ALJ cites Exhibit 14F[75] in support of his statement that the 2008 MRI "results showed 'slight' degenerative change, vascular calcification, and a large effusion."  While page one of Exhibit 14F is from the body of the MRI report, page two of the exhibit shows the results of the 2008 x-rays.[76] Exhibit 14F does not include the results of the 2008 MRI report.[77]

To the extent that Martinez argues that due to this error, the ALJ's RFC findings are not supported by substantial evidence, Martinez's argument fails.  The ALJ made an express determination that Martinez was not credible with respect to his reports of knee pain.[78]  The ALJ noted that Martinez reported no left knee pain in March 2008 and, in August 2008, left knee flexion was 90% normal.[79]  October 2008 is the first and only time that any medical evidence indicates a torn meniscus.  The ALJ additionally considered evidence from 2009 – after the 2008

---

[73] *See* 20 C.F.R. § 416.929; *see also* SSR 96-4p, 1996 WL 374187 (Jul. 2, 1996); *id.* at 96-7p, 1996 WL 374186 (Jul. 2, 1996).

[74] *See Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1257.

[75] *See* AR at 20.

[76] See *id.* at 421-22. It appears that this error was not the ALJ's fault – he considered the exhibits in the order they were presented to him.  It appears that whoever compiled the records combined the body of the 2008 x-ray report with the findings of the 2008 MRI.

[77] *See* AR at 20.

[78] *See id.* at 23.

[79] *See id.* at 21 (*citing* Exhibit 15F at 5, 8, 11).

12

Case No.: 11-5006 PSG
ORDER

MRI – which shows that Martinez's left knee had improved, with "no significant abnormalities as well as a normal gait and stability."[80]

Although there is some evidence indicating Martinez suffered from a torn meniscus, substantial evidence supports the ALJ's findings that Martinez nevertheless had the RFC to perform medium work during the time between the filing of his SSI application in September 2006[81] and when the ALJ issued his second determination in February 2010. The court must defer to an ALJ's determination that is supported by substantial evidence.

### 2.    Dr. Lo's Medical Opinion

Martinez argues that the ALJ erred by rejecting Lo's opinion as reported in the RFC questionnaire dated December 8, 2009[82] because she was his treating physician.

An ALJ is not required to give controlling weight to a treating physician's opinion unless it is well-supported and consistent with other substantial evidence in the record.[83] An ALJ must "give good reasons" for the weight given to a treating physician's opinion,"[84] but "may disregard

_____

[80] *See id.*

[81] Even though Martinez alleges disability since 2001, the ALJ properly used the September 2006 application date to begin the disability analysis. First, Martinez was gainfully employed from September 2005 through August 2006 and was therefore not disabled within the meaning of the SSA. Furthermore, "under Title XVI, there is no retroactivity of payment. [SSI] payments are prorated for the first month for which eligibility is established after application. . ." SSR 83-20, 1983 WL 31249 (1983).

Because the ALJ determined that Martinez was not disabled at any time between September 2006 and February 2010, there is no requirement that the ALJ determine an onset date. *See id.* ("[t]he only time a specific date of onset must be determined for SSI claims is when the onset is subsequent to the date of filing.").

[82] *See* AR at 489-93.

[83] 20 C.F.R. § 416.927(d)(2); *see also Halohan v. Massinari*, 246 F.3d 1195, 1202 (9th Cir. 2001).

[84] 20 C.F.R. § 405.1572.

13

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

the treating physician's opinion whether or not that opinion is contradicted."[85]  "For example, an ALJ need not accept a treating physician's opinion which is brief and conclusionary in form with little in the way of clinical findings to support [their] conclusion."[86]  As long as the ALJ gave specific and legitimate reasons supported by substantial evidence for rejecting the treating physician's opinion, there is no error.[87]

As a preliminary matter, although Martinez identifies Lo as his "treating physician," it is not all together clear that she is accurately labeled as such.  Treating physicians are "employed to cure" and "have a greater opportunity to know and observe the patient as an individual."[88]  It appears from the record that Lo rarely saw Martinez and served primarily as a reference point for his visits and clinical exams.[89]

Be that as it may, even if Lo is properly identified as the treating physician, the ALJ gave specific reasons for discounting her opinions.  As Martinez points out, the ALJ rejected Lo's opinion because: "(1) she does not show clinical findings which reflect significant dysfunction; (2)

---

[85] *Magallenas v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

[86] *Id.* (internal citations omitted).

[87] *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  In his opposition, the Commissioner states that the 9th Circuit requires the ALJ to provide "'clear and convincing' reasons to reject the [uncontradicted] opinion of a treating physician.").  Docket No. 19 (*citing Lester*, 81 F.3d at 830-31).  Because Lo's opinion is contradicted by the opinions of Clark and Gable, the "clear and convincing reasons" standard does not apply.  *See Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).  Nonetheless, the court finds that the reasons the ALJ cites for rejecting Lo's opinion are clear and convincing.

[88] *Id.*

[89] According to his papers, Martinez received medical care under the Santa Clara Valley Health system for indigent care, s*ee* Docket No. 17 at 4, and "Lo's opinion was based on access to all Mr. Martinez (sic) medical records".  *See* Docket No. 20 at 2.  Although Lo is listed as Martinez's primary care physician throughout the medical record, Martinez was often seen by doctors other than Lo.  *See, e.g.*, AR at 422 (Martinez seen by Dr. Prameela Madamala); *id.* at 436 (Dr. Elizabeth Desmond); *id.* at 457-58 (Dr. Steven Yoshioka); *id.* at 394 (Dr. Ben Wong); *id.* at 285 (Dr. Thomas Kelsey).

14

Case No.: 11-5006 PSG
ORDER

United States District Court
For the Northern District of California

the record does not reflect MRI findings showing a torn meniscus; and (3) she does not assess limitations."[90]

In the 2009 RFC questionnaire, the only clinical findings reported by Lo consist of verbatim copying of the findings from the 2007 spinal MRI, the 2008 left knee MRI, and the nerve conduction tests.[91]  Lo did not supplement the clinical findings with any findings of her own.

As Martinez concedes, Lo did not respond to any questions related to Martinez's functional limitations[92] which comprise more than three pages of the five page questionnaire: Instead, Lo wrote "unable to assess" next to all of the limitation questions.[93]

In sum, Lo's opinions are not supported by the record and in fact do not support Martinez's claim.  Lo never made a substantive finding of disability; she merely collated and recited verbatim the medical evidence provided to her, and she never opined as to Martinez's limitations or his ability to work.

As Martinez concedes, the ALJ gave specific reasons for discounting Lo's opinion and the court finds that these reasons are clear and convincing and supported by substantial evidence.

**B.  RFC Determination**

    **i.      Medically Determinable Impairments**

Martinez argues that the ALJ erred by not including neuropathy in assessing his RFC because Lo included "possible peripheral neuropathy" in her diagnosis.[94]

---

[90] Docket No. 19 at 6.

[91] *See* AR at 489; *cf. id.* at 422, 456, and 485.

[92] Docket No. 17 at 7.

[93] *See* AR at 489–93. Lo submitted a letter explaining that she could not opine on Martinez's physical limitations since such an "evaluation is not done by any of the physicians in our department, as we are not qualified to do this type of extensive and detailed functional evaluation." *Id.* at 354.  Thus, even if Lo had opined on Martinez's limitations, the opinion would not be entitled to great weight to the extent that Lo is not qualified to make such assessments.

15

When assessing RFC, the ALJ must consider all "medically determinable impairments" [95] of which the SSA is aware, regardless of the severity. [96]  "[T]he existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities, *i.e.*, medical signs and laboratory findings." [97]  A medical opinion offered in support of an impairment must include "symptoms [and a] *diagnosis.*" [98]  "[U]nder no circumstances may the existence of an impairment be established on the basis of [reports of] symptoms alone." [99]

The ALJ properly included all of Martinez's medically determinable impairments.  Lo did not in fact medically determine that Martinez suffered from neuropathy; she merely parroted the inconclusive results of the 2009 nerve conduction tests which showed that Martinez *might* suffer from neuropathy. [100]  In fact the EMG component of the nerve test performed on Martinez's left leg, the more symptomatic side, was completely normal. [101]  Although there are several reports by

---

[94] Docket No. 17 at 7.

[95] 20 C.F.R. § 416.945(a)(2).

[96] In his reply brief, the Commissioner argues that the ALJ did not have to consider neuropathy in the RFC analysis since it was not a severe disability.  But 20 C.F.R. § 416.923 provides that all "medically determinable disabilities" – regardless of severity – must be considered when determining whether a claimant's combination of claimed disabilities result in severe impairments; s*ee also Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003).

[97] *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (*citing* SSR 96-4p, 1996 WL 374187 (Jul. 2, 1996)).

[98] *Id.* (*citing* SSR 96-6p, 1996 WL 374180 (July 2, 1996)) (emphasis in original).

[99] *Id.*

[100] Martinez takes issue with the ALJ's characterization of the EMG results as "inclusive," which appears to be a typo.  The ALJ's determination regardless is supported by substantial evidence.

[101] *Id.*

Case No.: 11-5006 PSG
ORDER

Martinez of numbness throughout the five years of medical records in the AR, Martinez provides neither medically determinable symptoms nor a diagnosis of his alleged neuropathy.

With no objective findings of neuropathy and no diagnosis of neuropathy, the ALJ did not err by failing to include the condition in his analysis because neuropathy is not one of Martinez's medically determinable impairments.  Therefore, the ALJ's determination is supported by substantial evidence.

## C.     The ALJ's Vocational Findings

Martinez argues that the ALJ improperly relied on VE testimony in determining that there were significant numbers of jobs in the economy that he could perform.  According to Martinez, the VE testified that Martinez could only perform the jobs of meat clerk and driver's helper with 613 and 170 available jobs, respectively, in the region, and that of these 783 jobs, he could only perform 266 (*i.e.*, roughly one-third) due to his additional limitations.  Martinez essentially argues that 266 locally available jobs do not constitute "significant numbers" for the purposes of 20 C.F.R. § 404.1566.

Whether significant numbers of jobs exist is a question of fact to be determined by the ALJ.[102]  VE testimony is an appropriate method for the ALJ to meet the burden of showing that there is work in significant numbers in the national economy that a claimant can perform.[103] "Work exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country."[104]  The calculation "can be *either* regional jobs (the region where a claimant resides) *or* in several regions of the country

---

[102] *See Beltran v. Astrue*, 700 F.3d 386, 393 (9th Cir. 2012).

[103] *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

[104] *Beltran*, 700 F.3d at 390; *see also* 20 C.F.R. §§ 404.1566(a), (b).

17

Case No.: 11-5006 PSG
ORDER

United States District Court
For the Northern District of California

(national jobs)."[105]  If the court finds either of the two numbers significant, the court must uphold the ALJ's determination.[106]

Contrary to Martinez's argument, the VE did not testify that Martinez could only perform the jobs of meat clerk or driver's helper, nor that 266 of these jobs were available regionally.  The VE testified that in light of Martinez's limitations, he could perform roughly one-third to one-half of all jobs in the medium work category.[107]  As examples of medium category jobs Martinez could perform despite his limitations, the VE gave specific examples of driver's helper and meat clerk with 170 and 613 locally available jobs, respectively.  Thus, the VE testified that there were *at least* 783 regional jobs that Martinez could perform.

As the Ninth Circuit instructs,[108] district courts are to look at the number of both regionally available and nationally available jobs.  According to the VE testimony, there were 442,507 nationally available jobs in the medium work category, of which Martinez could perform one-half to one-third (*i.e.*, 147,502 to 221,254).[109]  The VE's testimony that there were between 147,000 and 221,000 nationally available jobs and *at least* 783 locally available jobs provide substantial evidence supporting the ALJ's determination that there were a significant number of jobs that Martinez could perform in the national economy.[110] These numbers of jobs are within the range of "significant" for purposes of 20 C.F.R. § 404.1566.

---

[105] *Beltran*, 700 F.3d at 389 (internal citations omitted) (emphasis in original).

[106] *See id.*

[107] *See* AR at 73-81.

[108] *See Beltran*, 700 F.3d 386.

[109] *See* AR at 73-81.

[110] *See, e.g., Moncada,* 60 F.3d 521 (2,300 regional and 64,000 national jobs); *Barker v. Sec'y of Health & Human Services*, 882 F.2d 1474, 1479 (9th Cir. 1989) (1,266 regional jobs) (relying on *Uravitch v. Heckler*, No. CIV–84–1619–PHX–PGR, 1986 WL 83443, at *1 (D. Ariz. May 2, 1986)

18

Case No.: 11-5006 PSG
ORDER

### III.    CONCLUSION

Martinez's motion for summary judgment is DENIED and the Commissioner's cross-motion for summary judgment is GRANTED.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: February 25, 2013

PAUL S. GREWAL
United States Magistrate Judge

United States District Court
For the Northern District of California

---

(50-67% of 500 regional jobs, *i.e.*, 250 to 333); *cf. Beltran*, 700 F.3d 386 (135 regional and 1,680 national jobs did not constitute substantial evidence of significant numbers).

The court does not reach the question of whether 783 regional jobs alone provide substantial evidence of "significant numbers" of available jobs.

Case No.: 11-5006 PSG
ORDER